1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11    ANTUAN WILLIAMS,                    )  Civil No. 07-1745-WQH(WVG)
                                          )
12                      Plaintiff,        )  REPORT AND RECOMMENDATION
                                          )  GRANTING MOTION FOR
13    v.                                  )  SUMMARY JUDGMENT
                                          )  (DOC. # 38)
14    G.J. JANDA, et al.,                 )
                                          )
15                      Defendants.       )
                                          )
16    _____  )

17

18          On January 28, 2008, Plaintiff Antuan Williams (hereafter

19    "Plaintiff") filed a First Amended Complaint (hereafter "FAC")

20    pursuant to 42 U.S.C. § 1983, alleging that his civil rights were

21    violated. Plaintiff's FAC contains causes of action for Retaliation

22    for Exercise of First Amendment Rights, Cruel and Unusual Punishment

23    in violation of the Eighth Amendment, and Denial of Equal Protection

24    under the Fourteenth Amendment.  On January 15, 2009, the District

25    Judge assigned to this case dismissed Plaintiff's causes of action

26    for Eighth Amendment Cruel and Unusual Punishment and Fourteenth

27    Amendment Equal Protection.  Therefore, the only cause of action

28

                                                              07cv1745

1  remaining in this action is Plaintiff's First Amendment Retaliation

2  claim.

3       The FAC named the following Defendants: G.J. Janda (hereafter

4  "Janda"), W.J. Price (hereafter "Price"), R. Johnson (hereafter

5  "Johnson")(hereafter collectively, "Defendants") and Anaya.   On

6  January 15, 2009, the District Judge assigned to this case dismissed

7  Defendant Anaya.

8       Defendants have brought a Motion for Summary Judgment.

9  Plaintiff has filed an Opposition to the Motion for Summary

10 Judgment. Defendants have filed a Reply to Plaintiff's Opposition.

11 The Court, having reviewed the Motion for Summary Judgment, the

12 Opposition to the Motion for Summary Judgment, the Reply to the

13 Opposition, and the documents attached thereto, hereby RECOMMENDS

14 that Defendant's Motion for Summary Judgment be GRANTED.

15                      <u>FACTUAL BACKGROUND</u>

16      Plaintiff alleges that, while he was housed at Calipatria

17 State Prison (hereafter, "Calipatria"), he had a work assignment as

18 the Chairman of the Men's Advisory Council (hereafter "MAC"), which

19 entailed addressing prison authorities with prisoners' concerns.

20 (FAC at para. 3). On June 20, 2007, Plaintiff had a meeting with

21 Johnson whereby Johnson notified Plaintiff he would be removed from

22 his work assignment if "plaintiff didn't stand down from criticizing

23 the Administration position regarding the denial of program towards

24 African Americans." (FAC at paras. 3, 4). Plaintiff alleges that in

25 closing the meeting, Johnson stated "no one here likes a whistle

26 blower." (FAC at para. 4). Further, Plaintiff alleges that on

27 June 22, 2007, Johnson and Price filed false charges against him,

28 and that Plaintiff was placed in administrative segregation

07cv1745

1   ("hereafter Ad Seg"), based on these charges. (FAC at paras. 5-7,

2   21). Plaintiff asserts that "prison disciplinary hearing procedures

3   were not taken to legally hold or house plaintiff in administrative

4   segregation." (FAC at paras. 6-9).

5     On June 28, 2007, Janda, Price, and Johnson ordered Plaintiff

6   to appear before the prison classification committee. (FAC at para.

7   8.)  Plaintiff alleges that on July 12, 2007, Plaintiff appeared

8   before the classification committee and was ordered released from

9   Ad Seg upon a finding that the charges against Plaintiff were false.

10  (FAC at para. 10).

11    Plaintiff alleges that at some point after the July 12, 2007

12  hearing, Plaintiff was again placed in Ad Seg pending transfer to

13  another prison. (FAC at para. 13). Plaintiff contends that the

14  decision to transfer him to another prison was based on false

15  confidential information and on a prior incident for which Plaintiff

16  had already served a term in a segregated housing unit. (FAC at

17  paras. 13-14).

18    Plaintiff alleges that he has been subject to the following

19  types of retaliatory conduct: unauthorized opening and reading of

20  his confidential legal mail, excessive cell searches, taking or

21  destruction of his property without justification, deprivation of

22  his work assignment, and unnecessary hostility and threats. (FAC at

23  para. 21.)

24               II

25        STANDARD FOR SUMMARY JUDGMENT

26    Fed.R.Civ.P. 56(c) authorizes the granting of summary

27  judgment "if the pleadings, depositions, answers to interrogatories,

28  and admissions on file, together with the affidavits, if any, show

07cv1745

1   that there is no genuine issue as to any material fact and that the
2   moving party is entitled to judgment as a matter of law."   The
3   standard for granting a motion for summary judgment is essentially
4   the same as for the granting of a directed verdict.   Judgment must
5   be entered "if, under the governing law, there can be but one
6   reasonable conclusion as to the verdict." Anderson v. Liberty
7   Lobby, Inc., 477 U.S. 242, 250-51 (1986).  However, "[i]f reasonable
8   minds could differ," judgment should not be entered in favor of the
9   moving party.  Id.; see also Blankenhorn v. City of Orange, 485 F.3d
10  463, 470 (9th Cir. 2007) ("If a rational trier of fact might resolve
11  the issue in favor of the nonmoving party, summary judgment must be
12  denied.") (alteration omitted).

13      The parties bear the same substantive burden of proof as
14  would apply at a trial on the merits, including plaintiff's burden
15  to establish any element essential to his case.  Liberty Lobby, 477
16  U.S. at 252; Celotex v. Catrett, 477 U.S. 317, 322 (1986); Taylor v.
17  List, 880 F.2d 1040, 1045 (9th Cir. 1989).

18      The moving party bears the initial burden of identifying the
19  elements of the claim in the pleadings, or other evidence, which the
20  moving party "believes demonstrates the absence of a genuine issue
21  of material fact." Celotex, 477 U.S. at 323; Adickes v. S. H. Kress
22  & Co., 398 U.S. 144 (1970); Zoslaw v. MCA Distrib. Corp., 693 F.2d
23  870, 883 (9th Cir. 1982).  "A material issue of fact is one that
24  affects the outcome of the litigation and requires a trial to
25  resolve the parties' differing versions of the truth." S.E.C. v.
26  Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  More than
27  a "metaphysical doubt" is required to establish a genuine issue of
28  material fact.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

07cv1745

1   *Corp.*, 475 U.S. 574, 586 (1986).

2        The burden then shifts to the nonmoving party to establish,

3   beyond the pleadings, that there is a genuine issue for trial.

4   *Celotex*, 477 U.S. at 324.   To successfully rebut a properly

5   supported motion for summary judgment, the nonmoving party "must

6   point to some facts in the record that demonstrate a genuine issue

7   of material fact and, with all reasonable inferences made in the

8   plaintiff[]'s favor, could convince a reasonable jury to find for

9   the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d

10  736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56; *Celotex*, 477 U.S.

11  at 323; *Anderson*, 477 U.S. at 249); *see also Galen v. County of Los*

12  *Angeles*, 477 F.3d 652, 658 (9th Cir. 2007) (noting that the

13  non-moving party may defeat summary judgment if she makes a showing

14  sufficient to establish a question of material fact requiring a

15  trial to resolve).

16                              III

17                          RETALIATION

18        In *Rhodes v. Robinson*, 408 F.3d 559 (9th cir. 2004), the Ninth

19  Circuit stated the standard for establishing retaliation claims in

20  the prison context.   Under the standard, a viable claim for First

21  Amendment Retaliation entails:

22        (1) An assertion that a state actor took some adverse action

23  against an inmate;

24        (2) because of;

25        (3) that inmate's protective conduct, and that such action;

26        (4) chilled the inmate's exercise of his First Amendment

27  rights; and

28        (5) the action did not reasonably advance a legitimate

                                5

1   correctional goal. Id. at 567-568 (footnote omitted)

2       1. Defendants did not take adverse action against Plaintiff

3       Plaintiff alleges that the following adverse actions were

4   taken against him: he was placed in Administrative Segregation

5   (hereafter "AD Seg") on the basis of false information, his

6   confidential legal mail was opened and read without his authoriza-

7   tion, he was subject to excessive cell searches, his property was

8   taken and/or destroyed without justification, he was deprived of his

9   work assignment, and he was subjected to unnecessary and frightening

10  hostility and threats.

11      (a) Placed in Ad Seg on the basis of false information

12      No single prison employee has the authority to place an

13  inmate in Ad Seg or retain him there. (Dec. of Price at para. 6,

14  hereafter "Price Dec."), (Dec. of Janda at paras. 4-6, hereafter

15  "Janda Dec.") Therefore, Janda, Price or Johnson did not have the

16  authority to unilaterally place Plaintiff is Ad Seg.

17      However, pursuant to California Code of Regulations, Title

18  15, Section 3335(a) (hereafter "CCR" or "Section 3335")[1], when an

19  inmate is deemed to be a threat to the safety and security of the

20  prison, he can be temporarily placed in Ad Seg, pending an investi-

21  gation.  Numerous prison staff are involved in administering an

22  inmate's placement in Ad Seg. (Dec. of Johnson at para. 6, and Exh.

23  A, hereafter "Johnson Dec."), (Price Dec., Exh A).

24

25

26  [1] CCR §3335(a) states:
        When an inmate's presence in an institution's general
27      population presents an immediate threat to the safety of
        the inmates or others, endangers institution security,
28      ...the inmate *shall* be immediately removed from the
        general population and placed in administrative
        segregation...(emphasis added)

1    Initial placement in Ad Seg is periodically reviewed by a classifi-

2    cation committee. [Janda Dec. at paras. 4-6, Section 3335(b)-(i)].

3          In this case, on June 22, 2007, Plaintiff was placed in Ad

4    Seg on the basis of information received by prison authorities that

5    indicated that Plaintiff was involved in a conspiracy to commit an

6    assault on a prison staff member. Consequently, it was determined

7    that, as a result of the information received by prison authorities,

8    Plaintiff was deemed a threat to the safety and security of the

9    prison. (Price Dec. at para. 3),(Johnson Dec. at para. 5). It does

10   not appear that Plaintiff challenges this initial placement in Ad

11   Seg.

12         Thereafter, on July 11, 2007, after the classification

13   committee completed its investigation into Plaintiff's alleged

14   conspiracy to commit an assault on a prison staff member, the

15   committee determined that there was insufficient evidence to charge

16   Plaintiff criminally or administratively with Conspiracy To Assault

17   Staff. (Janda Dec. at para. 5)(Price Dec. at para. 5). However, due

18   to certain confidential information contained in Plaintiff's file

19   and his history of assaultive behavior, as reflected in a Rules

20   Violation Report arising out of his involvement in a May 5, 1995

21   incident in which a number of prison staff members were assaulted

22   and seriously injured, the classification committee determined that

23   Plaintiff's continued presence at Calipatria State Prison posed a

24   threat to the safety and security of the prison.  Therefore, the

25   classification committee decided to continue to house Plaintiff in

26   Ad Seg, pending its recommendation that Plaintiff be transferred to

27   another prison. (Janda Dec. at para. 5 and Exh. B)(Price Dec. at

28   para. 5 and Exh. B).  In fact, Plaintiff admitted that he was

1  criminally prosecuted for the 1995 incident. Plaintiff stated at his
2  deposition that the 1995 incident resulted in his  pleading guilty
3  to assault with a weapon and that he received a sentence of six
4  years in prison for that offense. [Memorandum of Points & Authori-
5  ties in Support of Defendant's Motion for Summary Judgment,
6  (hereafter "Defendant's Motion") Plaintiff's Deposition, Exh. A at
7  p. 14, ll. 12 to p. 15, ll. 13].

8       On July 19, 2007, the classification committee again reviewed
9  Plaintiff's placement in Ad Seg and decided to retain him in Ad Seg
10  pending his transfer to another prison. (Janda Dec. at para 6 and
11  Exh. C)

12       Nevertheless, Plaintiff presents evidence that establishes
13  that on February 13, 2007, a classification committee found that
14  Plaintiff "no longer pose(d) an imminent threat to the safety and
15  security of the" prison.  Further, that "conclusion was based on the
16  fact that the information contained in (a) Confidential Memo (was)
17  over 10 years old."  Moreover, Plaintiff "ha(d) demonstrated a (sic)
18  progress of remaining disciplinary free... for the past 2 years."
19  [Declaration of Plaintiff (hereafter "Plaintiff Dec.") at para. 7
20  and Exh. I].  Price was a member of both the February 13, 2007 and
21  July 19, 2007 classification committees.  Therefore, Plaintiff
22  argues that two different committees, each containing Price as a
23  common member, reached inconsistent and contrary decisions. Further,
24  the prior assaultive behavior upon which the later committee found
25  him to be a threat to the safety and security of the prison, was the
26  "stale" incident on May 5, 1995. (Plaintiff Dec., Exh. B).

27       Defendants dispute this evidence.  Defendants argue that the
28  later committee that decided to retain Plaintiff in Ad Seg made its

07cv1745

1    decision on the basis of Plaintiff's violent history since before
2    2003, and on the basis of confidential information indicating that
3    Plaintiff was a threat to the safety and security of the prison.  To
4    support this assertion, Defendants cite to the Johnson Dec. at para.
5    5, the Janda Dec. at para. 5 and the Price Dec. at paras. 3-5.
6    However, those declarations, and the exhibits attached thereto, do
7    not state that the later committee's decision to retain Plaintiff in
8    Ad Seg was based on his violent history since before 2003.  The
9    declarations clearly state that the decision to retain Plaintiff in
10   Ad Seg was based on certain confidential information contained in
11   Plaintiff's file, and on the May 5, 1995 incident. Defendants do not
12   identify the confidential information in Plaintiff's file upon which
13   the committee's decision was based.

14          Nevertheless, while Plaintiff may have presented evidence
15   that tends to show that an adverse action was taken against him - he
16   was retained in Ad Seg based on false evidence - he fails to raise
17   any material fact that one or any of the named Defendants in this
18   case took the adverse action against him.  The best that can be
19   concluded from Plaintiff's presented evidence is that Price, by
20   virtue his participation in the February 13, 2007 classification
21   committee that found Plaintiff to not be a threat to the safety and
22   security of the prison, knew that a previous committee of which he
23   was a member had found contrary to what the later July 11, 2007
24   committee found.   However, neither Price, nor any of the other
25   named Defendants, acted alone, nor could they have acted alone, in
26   making either the February 13, 2007 or July 11, 2007 decisions.
27   Instead, the February 13, 2007 and July 11, 2007 classification
28   committees consisted of several other different prison personnel,

07cv1745

1    who made the decisions that they did.

2         Moreover, the evidence used by the July 11, 2007 committee to

3    retain Plaintiff in Ad Seg was not false.  Rather, the July 11, 2007

4    committee came to a different conclusion than that of the

5    February 13, 2007 committee, based on the same evidence in Plain-

6    tiff's file.   Plaintiff fails to demonstrate that his prior

7    documented assaultive behavior and the May 5, 1995 incident did not

8    occur, or that the reports that documented his behavior were untrue.

9    In fact the evidence presented to the Court shows that the evidence

10   is true.

11        As a result, Plaintiff fails to raise a genuine issue of

12   material fact that any Defendant named in this case placed or

13   retained him in Ad Seg based on false information.

14        Moreover, none of the named Defendants in this action took

15   any of the other adverse actions that Plaintiff claims were taken

16   against him.

17             (b) Confidential Legal Mail was opened and read

18        Plaintiff claims that his confidential legal mail was opened

19   and read without his authorization.   Aside from Plaintiff's

20   allegations, Plaintiff presents the Declaration of Jerome G. Jeter

21   to support his assertion. (Plaintiff Dec., Exh. F).   The Jeter

22   Declaration states in pertinent part that in August 2007, Plaintiff

23   was housed in the cell next to his at Calipatria State Prison.   At

24   that time, legal mail was delivered to him and to Plaintiff after it

25   was opened outside of their presence.

26        However, Plaintiff admitted at his deposition that none of

27   the named Defendants in this action ever opened or read his

28   confidential legal mail. (Defendants' Motion, Plaintiff's Deposi-

1   tion, Exh. A at p. 11, ll. 5-15). In fact the evidence presented to

2   the Court is clear that no named Defendant in this action ever

3   opened and/or read Plaintiff's mail. (Janda Dec. at para. 7), (Price

4   Dec. at para. 7), (Johnson Dec. at para. 7).

5        Plaintiff's allegations and the Jeter Declaration do not

6   establish that any of the named Defendants in this action opened and

7   read Plaintiff's confidential legal mail.   Instead, the Jeter

8   Declaration is evidence only that *someone* opened unidentified mail

9   before he and Plaintiff received it.  Without more, the Court can

10  not conclude that any of the named Defendants in this action engaged

11  in the alleged retaliatory conduct of opening and reading Plain-

12  tiff's confidential legal mail.

13              (c) Excessive cell searches

14       Plaintiff claims that his cell was excessively searched.

15  Aside from Plaintiff's allegations, Plaintiff presents the Declara-

16  tion of Jerome G. Jeter to support his assertion. (Plaintiff Dec.,

17  Exh. F)  The Jeter Declaration states in pertinent part that in

18  August 2007, Plaintiff was housed in the cell next to his at

19  Calipatria State Prison.  At that time, he heard Plaintiff complain

20  to prison officials that his cell was being excessively searched.

21  Jeter also intimates that he was also subject to excessive cell

22  searches.

23       Plaintiff also presents the Declaration of Sean Reynolds.

24  (Plaintiff Dec., Exh G).  The Reynolds Declaration states in

25  pertinent part that Plaintiff was his cell mate while the two were

26  housed in Ad Seg in 2007.  Reynolds states that he and Plaintiff

27  were subjected to numerous cell searches.  Reynolds further states

28  that in July 2007, his and Plaintiff's cell was searched over seven

07cv1745

1    times, and that Plaintiff complained about the excessiveness of the

2    cell searches. (Reynolds Dec. at paras. 6, 7, 9).

3         However, Plaintiff admitted at his deposition that none of

4    the named Defendants in this action ever searched his cell.

5    (Defendants' Motion, Plaintiff's Deposition, Exh. A at p. 11, ll. 16

6    - p. 12, ll. 2). In fact the evidence presented to the Court is

7    clear that no named Defendant in this action ever searched Plain-

8    tiff's cell. (Janda Dec. at para. 7), (Price Dec. at para. 7),

9    (Johnson Dec. at para. 7).

10        Plaintiff's allegations and the Jeter and Reynolds Declara-

11   tions do not establish that any of the named Defendants in this

12   action searched Plaintiff's cell, much less searched his cell

13   excessively.  Instead, the Jeter and Reynolds Declarations are

14   evidence that Jeter, Reynolds and Plaintiff *believed* that their

15   cells were excessively searched and that Jeter and Reynolds

16   witnessed Plaintiff complain about the alleged excessive cell

17   searches. Plaintiff's allegations and the Declarations do not

18   establish the normal or expected number of cell searches an inmate

19   in Ad Seg endures, much less that the noted number of cell searches

20   were excessive.  Without more, the Court can not conclude that any

21   of the named Defendants in this action engaged in the alleged

22   retaliatory conduct of excessively searching Plaintiff's cell.

23            (d) Hostility and threats

24        Plaintiff alleges that he was subject to hostility and

25   threats. However the evidence presented to the Court is clear that

26   none of the named Defendants in this action ever displayed hostility

27   toward Plaintiff or threatened him. (Janda Dec. at para. 7), (Price

28   Dec. at para. 7), (Johnson Dec. at para. 7).

07cv1745

1            (e) Deprivation of Work Assignment

2       As discussed above in Section III.1.a. of this Report and

3  Recommendation, Plaintiff was placed and retained in Ad Seg because

4  a classification committee determined that he was a threat to the

5  safety and security of the prison. It necessarily follows that if

6  Plaintiff was housed in Ad Seg, he was not in the prison's general

7  population where he could perform his work assignment of Chairman of

8  the MAC. However, as noted above, the evidence presented to the

9  Court is clear that no named Defendant in this action placed or

10  retained Plaintiff in Ad Seg, which consequently prevented Plaintiff

11  from performing his work assignment.  Without more, the Court can

12  not conclude that Plaintiff was subject to the retaliatory conduct

13  of deprivation of his work assignment.

14       As a result, the Court concludes that no named Defendant in

15  this action took any of the alleged retaliatory actions against

16  Plaintiff. Therefore, there is no genuine issue of material fact

17  regarding whether a retaliatory act was taken against Plaintiff.

18                                    IV

19  DEFENDANTS DID NOT TAKE ANY ACTION AGAINST PLAINTIFF *BECAUSE OF* THE
            EXERCISE OF HIS FIRST AMENDMENT RIGHTS

20       Plaintiff states that his placement and retention in Ad Seg

21  was because of the exercise of his First Amendment rights.

22  Plaintiff contends that while he was the Chairman of the MAC, at a

23  June 20, 2007 Men's Advisory Council meeting, he complained about

24  the "lack of program" for African-American inmates, which had

25  previously been suspended. [Plaintiff's Opposition to Motion for

26  Summary Judgment (hereafter "Plaintiff's Opp.", Exh. D](Declaration

27  of S. Bruckner at para. 3, and the documents attached thereto).

28  Further, Plaintiff states that at that meeting, Johnson told him

07cv1745

1   that he (Plaintiff) would be removed from his work assignment if he

2   "didn't stand down from criticizing the Administration position

3   regarding denial of program towards African-Americans." (FAC at

4   paras. 3, 4). Additionally, Plaintiff alleges that at the meeting,

5   Johnson stated, "(N)o one likes a whistle blower." (FAC at para 4).

6   Plaintiff asserts that Johnson's tone in making those statements

7   implied that the statements were directed to him. (Plaintiff Dec. at

8   para. 20).

9       Aside from Plaintiff's allegations, Plaintiff presents the

10  Reynolds Declaration which states in pertinent part that Reynolds

11  was housed at Calipatria State Prison from July to September 2007,

12  and that in July 2007, he heard Johnson informing Plaintiff that

13  Plaintiff would "never return to the general prison population

14  because he complained too much." (Reynolds Dec. at para. 4).

15      However, even if Defendants took adverse action against

16  Plaintiff (which the Court has found they did not), Defendants

17  present convincing evidence that Plaintiff was not placed or

18  retained in Ad Seg *because of* the exercise of his First Amendment

19  rights.

20      First, Plaintiff did not personally complain about the "lack

21  of program" for African-American inmates. (Defendant's Motion,

22  Plaintiff's Deposition, Exh. A at p. 7, ll. 14 - p. 8, ll. 17).

23      Second, even if Plaintiff had personally complained about the

24  "lack of program" for African-American inmates, Janda and Johnson

25  were not aware of any such complaint. (Janda Dec. at para. 3),

26  (Johnson Dec. at para. 3). No evidence has been presented that

27  Price was or was not aware of any such complaint.

28      Third, Plaintiff offers nothing more than his self-serving

07cv1745

1    uncorroborated statements that Johnson allegedly told him he "would

2    be removed from his work assignment if he did not stand down from

3    criticizing the Administration regarding denial of program towards

4    African-American inmates," and "(N)o one here likes a whistle

5    blower."  Moreover, Plaintiff merely suggests, without any eviden-

6    tiary support, that Johnson's tone in allegedly making these

7    statements indicated that the statements were directed at him.

8    Further, Reynold's assertion that he heard Johnson tell Plaintiff he

9    would "never return to the general prison population because he

10   complained too much," does not indicate the date and time in which

11   that statement was allegedly made.  Therefore, it is conceivable

12   that the statements, if made at all, were made while the recommenda-

13   tion to transfer Plaintiff to another prison was pending, or after

14   that recommendation had been adopted.  As a result, the statements

15   may have been an expression of what Johnson knew at the time,

16   coupled with harmless antagonistic words about Plaintiff's placement

17   in Ad Seg. In any event, Reynold's statement is inadmissible hearsay

18   as it is offered for proof of the matter asserted in the statement.

19       The record presented to the Court clearly shows that

20   Plaintiff was placed and retained in Ad Seg, not in retaliation for

21   the exercise of his First Amendment rights, but because he was

22   deemed to be a threat to the safety and security of the prison.

23   This determination was based on prison authorities' receipt of

24   information that indicated that Plaintiff was involved in a

25   conspiracy to assault a prison staff member, and his prior

26   assaultive behavior in the prison. (Johnson Dec. at para. 5), (Janda

27   Dec. at para. 5 and Exh. B).

28       Therefore, the Court cannot conclude that Plaintiff was

07cv1745

1   placed and retained in Ad Seg *because of* the exercise of his First

2   Amendment rights.

3                                    V

4        DEFENDANTS DID NOT CHILL PLAINTIFF'S FIRST AMENDMENT RIGHTS

5        In Rhodes, the court noted that to establish the fourth

6   element of a claim for Retaliation for Exercise of First Amendment

7   rights, a Plaintiff must prove a "harm that is more than minimal"

8   chilled his First Amendment rights. Rhodes 408 F.3d at 568, n. 11.

9   The court also noted that "the proper First Amendment inquiry asks

10  'whether an official's acts would chill or silence a person of

11  ordinary firmness from future First Amendment activities.'" Id. at

12  568, citing Mendocino Environmental Center v. Mendocino County, 192

13  F.3d 1283, 1300 (9th Cir. 1999).

14       Plaintiff asserts that the decision to place and retain him

15  in Ad Seg caused him to suffer more than minimal harm. (Plaintiff's

16  Opp. at 6, 7).  He asserts that his placement in Ad Seg "deprived"

17  him of "adequate program... as the Men's Advisory Counsel (sic)

18  Chairman..."  Plaintiff also appears to allege that he suffered more

19  than minimal harm in that while he was housed in Ad Seg, his ability

20  to file grievances was hampered.

21       California's prison regulations provide that the living

22  conditions in Ad Seg "approximate those of the general population."

23  CCR §3343(a).  The regulations detail the items and activities that

24  are to be provided to inmates housed in Ad Seg.  These items and

25  activities include clothing, meals, visits, means of personal

26  hygiene, exercise, reading materials, telephone and participation in

27  prison programs and services. CCR §3343.  Any restriction of these

28  items or activities must have a basis and must be documented. CCR

1  3343(b). Placement and retention in Ad Seg is not punitive; inmates
2  are sometimes placed in Ad Seg for their own protection. CCR
3  §3341.5. As a result, placement in Ad Seg does not chill or silence
4  an inmate's First Amendment rights. Moreover, Plaintiff has not
5  presented any evidence to suggest that any of the CCRs regarding
6  placement and retention in Ad Seg were not followed as to him.

7      Here, Plaintiff does not explain how his placement and
8  retention in Ad Seg deprived him of "adequate program... as the
9  Men's Advisory Counsel (sic) Chairman." The Court construes
10 Plaintiff's statement to mean that the business of the MAC could not
11 be completed without him as Chairman. (See Plaintiff's Opposition at
12 3, 5). It may be true that when Plaintiff was housed in Ad Seg, he
13 could not act as the Chairman of the MAC. However, Plaintiff
14 himself presents to the Court evidence that other inmates were
15 Executive Council Members of the MAC, who presumably performed the
16 work of the MAC in his absence. (Plaintiff Dec., Exh. L), (Bruckner
17 Dec. at para. 2). Plaintiff does not present to the Court any
18 evidence that without a Chairman, or without him specifically, the
19 work of the MAC could not be completed. Therefore, the Court can
20 not conclude that Plaintiff's placement and retention in Ad Seg
21 "deprived" him of "adequate program... as the Men's Advisory Counsel
22 (sic) Chairman," caused him more than minimal harm, or chilled or
23 silenced him from future First Amendment activities.

24     Further, Plaintiff admits that he filed numerous grievances
25 and appeals concerning his placement and retention in Ad Seg. These
26 grievances and appeals were appealed to the highest level of
27 administrative review and were denied. (Defendants' Motion,
28 Plaintiff's Deposition at p. 16, ll. 19 - p. 17, ll. 13). Prison

1   records show that Plaintiff filed numerous grievances and appeals

2   while he was housed in Ad Seg. (Declaration of D. Bell at para. 6

3   and Exh. A), (Declaration of D. De Geus at para. 6 and Exh. A),

4   (Declaration of N. Grannis at para. 6 and Exh. A).   Plaintiff

5   himself has presented to the Court grievances and appeals he filed

6   while he was housed in Ad Seg.   These grievances and appeals concern

7   his placement and retention in Ad Seg. (Dec. Of Plaintiff, Exhs. E,

8   J, K).   The evidence noted above plainly shows that Plaintiff was

9   able to freely present his complaints to prison authorities.

10   Therefore, the Court can not conclude that Plaintiff's placement and

11   retention in Ad Seg hampered his filing of grievances and appeals,

12   caused him more than minimal harm, or chilled or silenced him from

13   future First Amendment activities.

14                                      VI

15   PLAINTIFF'S PLACEMENT AND RETENTION IN ADMINISTRATIVE SEGREGATION
                  ADVANCED A LEGITIMATE CORRECTIONAL GOAL

16            Plaintiff asserts that his placement and retention in Ad Seg

17   did not further a legitimate correctional goal.   Plaintiff contends

18   that his placement and retention in Ad Seg was the result of his

19   criticism of the prison's administration's "position regarding the

20   denial of program for African-American inmates," and Defendants'

21   "filing of false charges against him."   However, Plaintiff does not

22   offer any evidence to suggest that placing him in Ad Seg did not

23   advance a legitimate correctional goal under the circumstances in

24   this case.

25            In Section 1.(a). of this Report and Recommendation, the

26   Court concluded that Plaintiff was placed in Ad Seg because prison

27   officials had received information that Plaintiff was involved in a

28   conspiracy to assault a prison staff member.   Further, the Court

07cv1745

1   found that Plaintiff was retained in Ad Seg because he had a
2   documented history of assaultive behavior while he was housed at
3   Calipatria, that his presence at the prison posed a threat to the
4   safety and security of the prison, and that he should be transferred
5   to another prison.

6        CCR §3335(a) requires that when an inmate is deemed to be a
7   threat to the safety of inmates or others, the inmate *shall* be
8   immediately removed from the prison's general population and be
9   placed in Ad Seg. (See fn. 1) It is clear that prison officials
10  complied with CCR 3335(a). Therefore, it cannot be seriously
11  disputed that compliance with CCR 3335(a) and protecting general
12  population inmates and others from a threat to those persons' safety
13  is a legitimate correctional goal.

14       Therefore, the Court concludes that placing and retaining
15  Plaintiff in Ad Seg under the circumstances of this case reasonably
16  advanced a legitimate correctional goal.

17                              VII

18          <u>DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY</u>

19       Defendants contend that summary judgment is proper because
20  they are entitled to qualified immunity in that they did not violate
21  Plaintiff's constitutional rights.    Plaintiff contends that
22  Defendants are not entitled to qualified immunity because the sole
23  purpose of their acts "would likely impose a constitutional
24  violation on him." (Plaintiff's Opposition at 7).

25       Qualified immunity shields government officials performing
26  discretionary functions from liability for civil damages unless
27  their conduct violates clearly established statutory or constitu-
28  tional rights of which a reasonable person would have known.

07cv1745

Anderson v. Creighton, 483 U.S. 635, 640 (1987)

"In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence.  Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."  Saucier v. Katz, 533 U.S. 194 (2001).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  Saucier, 533 U.S. at 197 [quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)].  The privilege is "an immunity from suit rather than a mere defense to liability;  and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Mitchell, 472 U.S. at 526.  Thus, the Supreme Court has "repeatedly... stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).[2]

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the office's conduct violated a constitutional right? This must be the initial inquiry."  Saucier, 533 U.S. at 199 [citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)].  "If no constitutional

---

[2]     "[Q]uite aside from the special concerns regarding the need for early resolution of matters concerning immunity, litigants are ordinarily entitled to resolution of their summary judgment motions through a determination whether there are material facts in dispute regarding the elements necessary to establish liability."  Paine v. City of Lompoc, 265 F.3d 975, 984 (9th Cir. 2001) (citation omitted).

07cv1745

right would have been violated were the allegations established,

there is no necessity for further inquiries concerning qualified immunity." Id.

"On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. Thus, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (citing Anderson, 483 U.S. at 640).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (citing Wilson v. Layne, 526 U.S. 603, 615 (1999) ["(A)s ... explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").  "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 2156-57 [citing Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.")]

Here, the Court has previously found that Plaintiff failed to establish that any Defendant in this case took an adverse action

07cv1745

against him because of the exercise of his First Amendment rights. Further, Plaintiff can not show, and has not shown, that his First Amendment rights were violated by Defendants.  Therefore, pursuant to the analysis under <u>Saucier</u>, the inquiry could end here, and the Court could conclude that Defendants are entitled to qualified immunity.

However, if the second step in the <u>Saucier</u> analysis is applied to the facts of this case, Plaintiff can not show, and has not shown, that he had a "clearly established" right to be free from placement and retention in Ad Seg.  In fact, placement and retention in Ad Seg for the safety and security of the prison is expressly required by the CCR.  It is clear that prison officials relied on that requirement in placing and retaining Plaintiff in Ad Seg because he was deemed to be a threat to the safety and security of the prison.  Therefore, Defendants are entitled to qualified immunity under the circumstances of this case.

<u>CONCLUSION AND RECOMMENDATION</u>

The Court, having reviewed Defendants' Motion for Summary Judgment, Plaintiff's Opposition to the Motion for Summary Judgment, Defendants' Reply to the Plaintiff's Opposition, and all the documents lodged therewith and attached thereto, finds that Defendants did not retaliate against Plaintiff for the exercise of his First Amendment rights.  Further, the Court finds that Defendants are entitled to qualified immunity under the circumstances of this case.  Therefore, the Court RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to

07cv1745

1    this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

2         **IT IS ORDERED** that no later than <u>May 17, 2010</u>, any party to

3    this action may file written objections with the Court and serve a

4    copy on all parties.  The document should be captioned "Objections

5    to Report and Recommendation."

6         **IT IS FURTHER ORDERED** that any reply to the objections shall

7    be filed with the Court and served on all parties no later than

8    <u>June 4, 2010</u>. The parties are advised that failure to file objec-

9    tions within the specified time may waive the right to raise those

10   objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951

11   F.2d 1153 (9th Cir. 1991).

12

13   DATED:  April 15, 2010

14

15                                    _____

16                                    Hon. William V. Gallo
                                      U.S. Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

                                                              07cv1745