1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

ATUAN WILLIAMS,

CASE NO. 07cv1745 WQH (WVG)

12

Plaintiff,

**ORDER**

vs.

13

GJ JANDA, Correctional Associate

14

Warden; WJ PRICE, Correctional Facility
Captain; R JOHNSON, Correctional
Lieutenant; ANAYA, Correctional

15

Counselor II; NELSON, Correctional
Lieutenant,

16
17

Defendants.

18

HAYES, Judge:

19

        The matters before the Court are Defendants' Motion for Summary Judgment (Doc.

20

# 38) and the Report and Recommendation of the Magistrate Judge (Doc. # 44).

21

**BACKGROUND**

22

**I.      Procedural History**

23
24

        On September 1, 2007, Plaintiff, a state prisoner proceeding *pro se*, initiated this action

25

by filing his Complaint.  (Doc. # 1).  On September 13, 2007, the Court dismissed the case

26

without prejudice for failure to pay the filing fee or to move to proceed *in forma pauperis*

27

("IFP").  On October 31, 2007, Plaintiff moved to proceed IFP.  (Doc. # 4).  On December 6,

28

2007, the Court granted Plaintiff IFP status.  (Doc. # 6).

        On January 22, 2008, Plaintiff filed a First Amended Complaint ("FAC") which is the

operative pleading. (Doc. # 8). Plaintiff's FAC alleges claims against Defendants G. Janda, W. Price, R. Johnson, and J. Anaya, employees of the California Department of Corrections and Rehabilitation at Calipatria State Prison. *Id.* The FAC alleges claims for Retaliation for Exercise of First Amendment Rights, Cruel and Unusual Punishment in violation of the Eighth Amendment, and Denial of Equal Protection in violation of the Fourteenth Amendment. *Id.* The FAC alleges Plaintiff had a work assignment as chairman of the Men's Advisory Council ("MAC"), which involved addressing prisoners' concerns. *Id.* at 3-4. The FAC alleges that on June 20, 2007, Defendant Johnson told Plaintiff that if he "didn't stand down from criticizing the Administration position regarding the denial of program towards African Americans he would be bar[red] from his work assignment." *Id.* at 4. The FAC alleges Defendant Johnson then told Plaintiff "no one here likes a whistle blower." *Id.* The FAC alleges Defendants Johnson and Price "violated his rights by filing false charges" against Plaintiff. *Id.* The FAC alleges Plaintiff was acquitted of these charges, but was eventually transferred despite this acquittal in retaliation for his work with the MAC. *Id.* at 4-5. The FAC alleges this transfer was based on an unfounded report from an informant in May of 1995. *Id.* at 6. The FAC alleges that after the transfer, Plaintiff continued to be subjected to mistreatment, including "unauthorized opening and reading" of his legal mail, "excessive cell searches" and the destruction of his property in retaliation for his work on the MAC. *Id.* at 7. Plaintiff signed the FAC "under penalty of perjury" and swore to the truth of his allegations. (Doc. # 8-1 at 3).

On January 15, 2009, the Court dismissed Plaintiff's claims for Cruel and Unusual Punishment in violation of the Eighth Amendment and Denial of Equal Protection in violation of the Fourteenth Amendment. (Doc. # 26). In the same order, the Court denied Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claim, concluding Plaintiff had stated a claim and that Defendants were not entitled to qualified immunity because "the prohibition against retaliatory punishment is clearly established in the Ninth Circuit for qualified immunity purposes." *Id.* at 8 (citation omitted).

On March 30, 2009, Defendants filed an Answer to Plaintiff's claim for Retaliation for

1  Exercise of First Amendment Rights.  (Doc. # 27).  On December 30, 2009, Defendants filed
2  their Motion for Summary Judgment. (Doc. # 38).  Also on December 30, 2009, the Magistrate
3  Judge issued a *Klingele/Rand* Notice to Plaintiff.  (Doc. # 39).  On February 2, 2010, Plaintiff
4  filed his opposition to the Motion for Summary Judgment.  (Doc. # 41).  On April 15, 2010
5  Magistrate Judge issued the Report and Recommendation ("R&R") which recommends
6  granting the motion for summary judgment.  (Doc. # 44).

7  **II.     The Motion for Summary Judgment**

8         Defendants contend that "the uncontroverted facts" show that Defendants did not take
9  any retaliatory actions against Plaintiff.  (Doc. # 38-1 at 7).  Defendants contend that "no single
10  prison staff member has the authority to autonomously place an inmate in Administrative
11  Segregation or to retain him there," so placing Plaintiff in administrative segregation cannot
12  be a retaliatory action against him.  *Id.* at 8.  Defendants contend that Plaintiff admits that none
13  of the named Defendants ever opened or read Plaintiff's confidential legal mail.  *Id.*
14  Defendants contend that any cell searches conducted by Defendant Johnson were "in
15  connection with an authorized investigation."  *Id.*  Defendants contend that it is undisputed that
16  none of the Defendants "ever subjected Plaintiff to hostility or threats."  *Id.*

17         Defendants contend that "[e]ven if Defendants can be deemed to have taken adverse
18  action against Plaintiff because of their participation in the process that led to his placement
19  in Administrative Segregation, it is undisputed that they did not do so *because* of Plaintiff's
20  exercise of protected conduct."   *Id.*   Defendants contend that "Plaintiff admits that he
21  personally did not complain about the lack of programs for African-Americans."  *Id.* at 9.
22  Defendants contend that even if Plaintiff did complain, Defendants Janda and Johnson were
23  not personally aware of it.  *Id.*  Defendants contend that Plaintiff's placement in administrative
24  segregation was based on Plaintiff's six-year-old conviction for assault on a prison guard.  *Id.*
25  Defendants contend that it was also based on "certain confidential information contained in
26  his file."[1]  *Id.*

27

28         [1] Defendants have not sought to file this information under seal and have not offered
any explanation as to what the "confidential information" relates to.

Defendants contend Plaintiff's First Amendment rights were not chilled because Plaintiff admits he has filed numerous grievances and has been permitted to appeal the issue. *Id.* at 10.  Defendants contend "Plaintiff cannot simply fall back on the claim that he is a person of extraordinary firmness" because placement in administrative segregation is too minimal to be "plausibly classified as a 'harm.'" *Id.* at 10.  Defendants contend placement in administrative segregation did not impede Plaintiff's exercise of his First Amendment rights. *Id.* Defendants contend the conditions in administrative segregation approximate those of the general population.  *Id.*  at 11.

Defendants contend that this case is distinguishable from cases where the Ninth Circuit has held that placement in administrative segregation could constitute retaliation which chilled a plaintiff's speech.  *Id.*  at 12.  Defendants contend that in those cases, a jury found that the plaintiff was placed in administrative segregation based on false reports, whereas in this case, Plaintiff was placed in administrative segregation "based on plausible information indicating that Plaintiff was a threat to the safety and security of the institution."  *Id.* Defendants contend that Plaintiff was placed in administrative segregation in furtherance of a legitimate correctional goal.  *Id.* at 13.

Defendants contend that they are protected by qualified immunity.  *Id.* at 14. Defendants contend that "Plaintiff cannot show under the specific facts of this case that he had a 'clearly established' right to avoid placement in Administrative Segregation based on confidential information."  *Id.* at 15.

In support of their motion for summary judgment, Defendants submitted an excerpt from Plaintiff's deposition testimony (Doc. # 38-1 at 19), the Declaration of D. Bell, Appeals Coordinator at Calipatria State Prison (Doc. # 38-2), the Declaration of D. De Geus, Appeals Coordinator at Centinela State Prison (Doc. # 38-3), the Declaration of G. Janda (Doc. # 38-4), the Declaration of R. Johnson (Doc. # 38-6), and the Declaration of W. Price (Doc. # 38-7).

In his deposition, Plaintiff testified that Defendants retaliated against him because he refused to "dismiss certain paperwork for [] grievances and general complaints that the general population was filing and I refused to do it and then I was removed" from the position of

"chairman of the Men's Advisory Council . . . ."  (Doc. # 38-1 at 21).  Plaintiff testified that the grievances were not his own grievances, rather complaints "pertaining to the general population."  *Id.* at 22.  Plaintiff testifies that Defendant Johnson was aware of the complaints because Plaintiff "filed agendas . . . that we're going to be discussing in [] meeting[s]" of the MAC.  *Id.*  Plaintiff testifies that Defendant Janda "oversaw the decision made by Price" to place Plaintiff in administrative segregation.  *Id.* at 23.  Plaintiff testifies that his mail was being withheld, but he does not have "specific knowledge" that it was withheld or opened by Defendant Janda or Defendant Johnson.  *Id.*  Plaintiff testifies that Defendants Johnson, Price, and Janda never personally searched Plaintiff's cell, but that Defendants "had the authority to have other correctional officers do it for them."  *Id.* at 23-24.

Plaintiff testified that Defendant Johnson labeled him a whistleblower and a snitch.  *Id.* at 24. Plaintiff testified that Defendant Johnson "was saying that nobody around here likes a whistleblower, and that's tantamount to saying that I was a snitch, and then two days later I was placed in the hole."  *Id.*  Plaintiff testified that Defendant Price did not threaten him directly, but states "Based on the information that was presented to him, and then the allegations that [were] filed against me as threatening to assault staff, that right there is enough to bring hostility upon me."  *Id.*

Plaintiff testified that he was transferred to administrative segregation based on his 1995 assault of correctional officers.  *Id.* at 26.  Plaintiff testified that he plead guilty to the assault. *Id.*  Plaintiff testified that he was transferred out of Calipatria to Centinela in 2007 and was held in Calipatria in administrative segregation until the transfer.  *Id.* at 27.  Plaintiff testified he was told he was transferred because he "was a threat to the institution, but apparently they said it's non-adverse."  *Id.*  Plaintiff testified he does not know what non-adverse means.  *Id.* Plaintiff states he filed five or six grievances while he was in administrative segregation in Calipatria.  *Id.*  Plaintiff states he attempted to file additional grievances but was not allowed to.  *Id.* at 28.

In a declaration, D. Bell, the Calipatria inmate appeals coordinator, states Defendant filed three appeals  after June of 2007.  (Doc. # 38-2 at 1-2).  Defendants submitted internal

records of those appeals as attachments to D. Bell's Declaration.  *Id.* at 4-7.

In his declaration, G. Janda states he does not "specifically remember Inmate Atuan Williams complaining about a lack of programs for African-Americans." (Doc. # 38-4 at 1). Janda states he reviewed Plaintiff's file on July 12, 2007 and that "[i]t was determined that there was insufficient evidence to charge Williams criminally or administratively with Conspiracy to Assault Staff." *Id.* at 2.  Janda further states that if was determined that Plaintiff's "continued presence at Calipatria may pose a threat" because of "certain confidential information" in Plaintiff's file and because of the May 5, 1995 assault.  *Id.*  Janda states that the Institutional Classification Committee, which he chairs, determined that Plaintiff should be detained in Administrative Segregation pending transfer to another prison.  *Id.* Janda states he signed off on a report recommending that course of action. *Id.*

Janda states he did not open or read Plaintiff's mail or instruct anyone else to do so. *Id.* Janda states he did not search Plaintiff's cell, destroy Plaintiff's property, or deprive Plaintiff of his work assignment.  *Id.*  Janda states that "loss of a work assignment is a consequence of placement in administrative segregation."  *Id.*

Records of the Institutional Classification Committee are attached to Janda's declaration.  *Id.* at 7.  A record dated June 28, 2007 states Plaintiff should be retained in administrative segregation pending investigation of a possible conspiracy to assault staff.  *Id.* It is signed by G.J. Janda, Chairperson of the Committee.  *Id.*  Defendants Price and Johnson are members of the committee.  *Id.*  A record dated July 12, 2007 states that "staff has determined that there is insufficient evidence to charge inmate either criminally or administratively." *Id.* at 8. Based on confidential information and the 1995 incident, however, the Committee concluded Plaintiff should nonetheless be transferred "due to safety and security of the institution."  *Id.*  The Committee also concluded that Plaintiff should be held in administrative segregation until transfer.  *Id.*  The record states the transfer is "non-adverse . . . ."  *Id.*  A record dated July 19, 2007 states that a transfer has been arranged and that Plaintiff would be placed in the general population upon arrival at the new prison, but that Plaintiff would be held in administrative segregation pending transfer.  *Id.* at 9.

In his declaration, R. Johnson states he was "assigned to meet with the Men's Advisory Council," who were elected representatives of the inmates to "act as a liaison" between staff and inmates." (Doc. # 38-6 at 1-2). Johnson states he was unaware that Plaintiff complained about a lack of programming for African-American inmates. *Id.* at 2. Johnson states he never advised Plaintiff "or any other inmate not to complain" and denies calling Plaintiff a whistleblower. *Id.* Johnson states "staff received information that Inmate Williams was involved in a conspiracy to commit battery on a peace officer." *Id.* Johnson states he signed off on the notice that Plaintiff was to be placed in administrative segregation on June 25, 2007. *Id.* Johnson states he did not open or read Plaintiff's mail or order that anyone else do so. *Id.* Johnson states he did not personally search Plaintiff's cell, and that if he ordered others to do so, it would have been "in connection with a formal investigation, or, as required by regulation" to inventory property after Plaintiff was placed in administrative segregation. *Id.* Johnson states he did not search Plaintiff's cell, destroy Plaintiff's property, or deprive Plaintiff of his work assignment. *Id.* Johnson states that "loss of a work assignment is a consequence of placement in administrative segregation." *Id.*

Johnson states he approved placing Plaintiff in administrative segregation "only on the basis of the information that the staff had received indicating that" Plaintiff was a security risk. *Id.* Johnson states it was not in retaliation for Plaintiff's complaints. *Id.* An attached form from the Department of Corrections states reasons for Plaintiff's transfer to administrative segregation. *Id.* at 5. The boxes "jeopardizes integrity of an investigation of alleged serious misconduct or criminal activity" and "endangers institution security" are checked. *Id.* The form is signed by Johnson and Price. *Id.*

In his declaration, W. Price states he signed off on continuing Plaintiff's detention until he was transferred out of Calipatria. (Doc. # 38-7 at 2). Price states the decision to place or retain an inmate in administrative segregation cannot be made by a single staff member. *Id.* Price states he never opened Plaintiff's mail or ordered anyone else to do so. *Id.* Price states he did not search Plaintiff's cell, destroy Plaintiff's property, or deprive Plaintiff of his work assignment. *Id.* Price states that "loss of a work assignment is a consequence of placement

1  in administrative segregation." *Id.* A form Department of Corrections form attached to Price's

2  statement states that Plaintiff is being retained in administrative segregation pending a transfer

3  because he "endangers institution security." *Id.* at 7. The form is signed by Price. *Id.*

4      In his opposition, Plaintiff contends that he was retaliated against for complaints raised

5  on behalf of other inmates by Defendants, who prevented him from keeping his position as

6  chair of the MAC, labeled him a whistleblower and a snitch, and transferred him to

7  administrative segregation because of his complaints. (Doc. # 41 at 6-8). Plaintiff contends

8  that his placement and retention in administrative segregation was not in furtherance of a

9  legitimate correctional goal because it was based on "stale evidence" which was used as a

10  pretext to retaliate against him. *Id.* at 9-10. Plaintiff contends that pretext is shown by the

11  proximity to Defendants' comments and the fact that he was held in administrative segregation

12  and then transferred even after an investigation failed to find evidence that he was involved

13  in any wrongdoing. *Id.* Plaintiff contends that Defendants were personally involved in these

14  decisions and that their motive was to "silence Plaintiff as the Men's Advisory Council

15  Chairman." *Id.* at 10. Plaintiff contends placement in administrative segregation does

16  constitute more than minimal harm. *Id.* at 11. Plaintiff contends that Defendants are not

17  entitled to qualified immunity because a reasonable person would have known that retaliation

18  for speech is a constitutional violation. *Id.* at 10.

19      In support of his opposition, Plaintiff submitted his own sworn declaration. (Doc. # 41-

20  2). Plaintiff states he has had difficulty in using the appeals process within the prison system

21  because his 602 grievance forms were repeatedly lost. *Id.* at 1-2. Plaintiff states that on

22  February 13, 2007, an annual review by the Unit Classification Committee found that he "no

23  longer posed a threat to the safety and security of this institution" because "the information

24  contained in the confidential Memo is over 10 years old." *Id.* at 2. Plaintiff states he remained

25  free of any disciplinary violations for the past two years. *Id.* Plaintiff states Price incorrectly

26  responded to an interrogatory stating that he had never chaired a classification committee. *Id.*

27  at 3. Plaintiff states Price conceded that the information in the confidential Memo is over 10

28  years old. *Id.* Plaintiff states Price signed off on keeping Plaintiff in administrative

1   segregation despite the evidence being stale. *Id.* at 3.  Plaintiff states being in "the general

2   prison population from administrative segregation" because in administrative segregation "a

3   prisoner remain[s] in [his] cell 22 hours a day" as opposed to spending 16 hours a day out of

4   the cell in the general population without "escort[s]" or "restrain[ts]." *Id.* at 5.  Plaintiff states

5   Johnson admits this in his interrogatories.    *Id.*  Plaintiff contends being in administrative

6   segregation means prisoners do not participate in prison programs and activities, do not work,

7   and are physically restrained more than in the general population. *Id.*  Plaintiff states that

8   Johnson said no one likes a whistleblower on June 20, 2007 and used a tone that was hostile

9   and threatening. *Id.*

10      Plaintiff also submitted various memoranda and notes from the MAC's meetings. (Doc.

11   # 41-2 at 15-30).  Some of the memoranda are addressed to Johnson, who was the "Captain"

12   of the facility. *Id.*  In these memoranda addressed to Johnson, Plaintiff raises various concerns

13   on behalf of inmates generally, such as the availability of recreational activities, opportunity

14   to exercise, television access and programming, and access to "rehabilitative activities." *See*

15   *id.*

16      Plaintiff submitted the declaration of another inmate, Jerome G. Jeter, who states he was

17   housed with Plaintiff at Calipatria in August 2007. (Doc. # 41-2 at 37).  Jeter states Plaintiff's

18   cell was searched excessively and the searches were not properly documented. *Id.*  Jeter states

19   he heard Plaintiff raise this issue with Sergeant Hughes who told Plaintiff "to take it up with

20   the higher ups you pissed off, it's [their] call." *Id.*  Jeter states Plaintiff asked Hughes what he

21   meant, and Hughes said he meant "the facility captain and associate warden." *Id.*

22      Plaintiff submitted the sworn declaration of Sean Reynolds, who was also an inmate at

23   Calipatria with Plaintiff in July through September of 2007.  (Doc. # 41-3 at 2).  Reynolds

24   states he was housed in the administrative segregation unit with Plaintiff. *Id.* at 3. Reynolds

25   states he overheard Johnson tell Plaintiff in July of 2007 that Plaintiff "would never return

26   back to the general prison population because he complained too much." *Id.*  Reynolds states

27   that Plaintiff's cell was searched repeatedly. *Id.*  Reynolds states he also overheard Plaintiff's

28   conversation with Sergeant Hughes in which Hughes told Plaintiff that he had "pissed off the

1    higher ups." *Id.* Reynolds states he witnessed Plaintiff submit numerous grievances related

2    to these incidents, but Plaintiff's grievances were not being processed. *Id.*

3        Plaintiff submitted a Unit Classification Committee memorandum dated February 13,

4    2007 which states that the committee has determined that Plaintiff "no longer poses an

5    imminent threat to the safety and security of this Institution" and notes that "the information

6    contained in the Confidential Memo is over 10 years old." *Id.* at 15. The memorandum states

7    Plaintiff "has demonstrated a progress of remaining disciplinary free at CAL-IV for the past

8    two years" and that his "last serious CDC 115 is dated 12-24-04 for Refusing to Stand at Cell

9    Door During Count Procedure." *Id.* Plaintiff's next review was scheduled for January of

10   2008. *Id.*

11       Plaintiff submitted forms which state that the prison has not received his appeals in the

12   appeals office. *See* Doc. # 41-3 at 16, 23.

13   **III.    The Report and Recommendation**

14       The R&R concluded that Defendants had taken no adverse action against Plaintiff. *Id.*

15   at 6. The R&R concluded that "[n]o single prison employee has the authority" to place an

16   inmate in administrative segregation and that Plaintiff was placed in administrative segregation

17   based on evidence that Plaintiff was involved in a conspiracy to assault staff members. *Id.* at

18   6-7. The R&R concludes that after prison officials concluded there was insufficient evidence

19   to keep Plaintiff in administrative segregation based on this evidence, they instead retained

20   Plaintiff in administrative segregation and then transferred him based on the 1995 incident,

21   which Plaintiff contends was "stale." *Id.* at 8-9. The R&R concluded that although "Plaintiff

22   may have presented evidence that tends to show that an adverse action was taken against him

23   – he was retained in ad seg based on false evidence – he fails to raise any material fact that one

24   or any of the named Defendants in this case took the adverse action against him" because the

25   classification committees include "several other prison personnel" who are not Defendants to

26   this action. *Id.* at 9-10. Further, the R&R concluded that the "false evidence" was not false,

27   because Plaintiff was prosecuted for and convicted of his involvement in the 1995 incident.

28

1   *Id.* at 10.  The R&R concludes that Plaintiff has failed to raise a genuine issue of material fact

2   as to whether he was placed in administrative segregation in retaliation for speech.  *Id.*

3           The R&R concludes that there is no genuine issue of material fact as to whether

4   Defendants opened Plaintiff's legal mail.  *Id.*   The R&R concludes that Plaintiff has no

5   evidence connecting any named Defendant to the opening of the mail, rather he only has

6   evidence that someone opened the mail. *Id.* at 11.   The R&R concludes that Plaintiff has not

7   offered any evidence of excessive cell searches because he has not established "the normal or

8   expected number of cell searches an inmate in administrative segregation endures . . . ."  *Id.*

9   at 12.  The R&R concludes that Plaintiff conceded in his deposition that none of the named

10  Defendants ever searched his cell.  *Id.*   The R&R concludes, citing to the declarations of

11  Defendants Janda, Price, and Johnson that "the evidence is clear that none of the named

12  Defendants in this action ever displayed hostility towards Plaintiff or threatened him."  *Id.*   The

13  R&R concludes that Plaintiff lost his work assignment as a result of being placed in

14  administrative segregation rather than in retaliation for his speech as the MAC chair. *Id.* at 13.

15          The R&R concludes that no action was taken against Plaintiff *because* of his speech.

16  *Id.*  The R&R concludes that Plaintiff did not "personally complain" about the available

17  program for African-American inmates and that even if he did, Defendants Janda and Johnson

18  were not aware of the complaints.  *Id.*  The R&R concludes that "Plaintiff offers nothing more

19  than his self-serving uncorroborated statements" to establish that Defendant Johnson told

20  Plaintiff that he would be removed from his work assignment if he persisted in criticizing the

21  administration of the prison and said "no one here likes a whistle blower."  *Id.* at 14-15.  The

22  R&R concludes that the other evidence Plaintiff offers, that another inmate overheard

23  Defendant Johnson tell Plaintiff that Plaintiff "would never be returned to the general prison

24  population because he complained too much"  is "inadmissible hearsay." *Id.* at 14-15.  The

25  R&R characterizes Defendant Johnson's statement as "an expression of what Johnson knew

26  at the time coupled with harmless antagonistic words about Plaintiff's placement in ad seg."

27  *Id.* at 15.

28          The R&R concludes that placement in administrative segregation would not "chill or

silence an inmate's first amendment rights" because "placement in ad seg is not punitive." *Id.* at 17. The R&R concludes that Plaintiff "admits that he filed numerous grievances and appeals concerning his placement and retention in ad seg" which "plainly shows that Plaintiff was able to freely present his complaints to prison authorities." *Id.* at 17-18. Therefore, the R&R states the court "cannot conclude that Plaintiff's placement or retention in ad seg . . . caused him more than minimal harm, or chilled or silenced him from future First Amendment activities." *Id.* at 18. The R&R concludes that placing Plaintiff in administrative segregation advanced a legitimate penological goal because Plaintiff had previously assaulted a guard in 1995. *Id.* at 19. The R&R concludes that Defendants are entitled to qualified immunity because Plaintiff had no clearly established right to be placed in administrative segregation. *Id.* at 22.

The R&R set a deadline of May 17, 2010 for objections and June 4, 2010 for replies. *Id.* On May 6, 2010, Plaintiff filed a document entitled "Motion for Reconsideration." (Doc. # 46). The Court docketed this filing as objections to the report and recommendation. *See id.* On May 19, 2010, Plaintiff filed objections to the Report and Recommendation. (Doc. # 48). On May 28, 2010, Defendants filed a Reply to Plaintiff's objections. (Doc. # 49). On June 9, 2010, Plaintiff filed a "Notice of Document Discrepancy" which states that the Court "misappl[ied] Plaintiff's 'Motion for Reconsideration' . . . as Plaintiff's Objections to the Magistrate 'Report and Recommendation' . . . . Plaintiff[] object[s] to the retitl[ing] of his Motion for Reconsideration." (Doc. # 50). Plaintiff further explains that his "Motion for Reconsideration" is a motion pursuant to Federal Rule of Civil Procedure 59(e) brought because "the Court did not have a complete record" when it issued the R&R.

Plaintiff's "Motion for Reconsideration" states Plaintiff was "not entitled to make any photo copies" prior to filing his opposition to the motion for summary judgment. (Doc. # 46 at 1). Plaintiff seeks reconsideration of the R&R based on additional evidence that he submitted with his motion. *Id.*

Plaintiff objects to the R&R on the grounds that Defendants did take adverse action against him. (Doc. # 48 at 2). Plaintiff contends that placing him in administrative segregation on the basis of false information constitutes adverse action. *Id.* Plaintiff contends Johnson,

- 12 -

as an acting facility captain, had discretion to determine whether to initially place Plaintiff in administrative segregation pending review. *Id.* at 2-3, 9. Plaintiff contends neither this Court nor he knows what the confidential information Defendants allegedly used in deciding to keep him in administrative segregation despite a previous determination that he was not a threat. *Id.* at 3.

Plaintiff contends that Defendants have failed to establish that confidential information exists because they have not produced it as evidence in support of their motion. *Id.* Plaintiff contends that Defendants could have produced it under seal for the Court's review, but failed to do so. *Id.* Plaintiff contends that the only confidential information that exists is the 1995 confidential memo, which prison officials determined in 2007 no longer made Plaintiff a threat. *Id.* at 4. Plaintiff contends that prison officials cleared him but then six days later reconsidered their decision and transferred him, with no intervening change in circumstances to justify the reversal. *Id.* at 5.

Plaintiff contends that he has offered evidence that his confidential legal mail was opened. *Id.* at 5-6. Plaintiff contends that evidence he offered that another prison official told Plaintiff that Plaintiff "had piss[ed] off higher up officials" is circumstantial evidence that Defendants were the ones who opened Plaintiff's mail and that they did it in retaliation for Plaintiff's speech. *Id.* at 6.

Plaintiff contends that Defendant Johnson attempted to block his return to the general prison population because "he complain[s] too much," as Johnson told Plaintiff in front of another inmate whose statement Plaintiff submitted. *Id.* at 7. Plaintiff contends he "was removed [from his work assignment] two days after Johnson made the comment that he would lose his job as MAC chairman if he did not stop criticizing the prison administrators." *Id.* at 9. Plaintiff contends that deprivation of his work assignment also constitutes retaliation. *Id.* at 7.

Plaintiff contends he only became a target for Defendants after he "sought to address the lockdown concerning the suspended program regarding African-American inmates." *Id.* at 8. Plaintiff contends the agendas and notes from meetings with Johnson are evidence that

1    Plaintiff raised these issues.  *Id.*  Plaintiff contends this evidence contradicts Johnson's

2    statement that Plaintiff never complained about lack of programming.  *Id.* at 8-9.

3        Plaintiff contends the R&R wrongly concluded that moving Plaintiff to administrative

4    segregation was "minimal harm."  *Id.* at 10.  Plaintiff contends Defendants have conceded in

5    a response to an interrogatory that there is a significant difference between administrative

6    segregation and the general population.  *Id.*   Plaintiff contends there is evidence that his

7    appeals were "lost and mishandle[d]," which contradicts the R&R's conclusion that he was

8    "able to freely present his complaints."  *Id.* at 11.  Plaintiff contends Defendants Janda and

9    Johnson prevented his complaints from being heard.  *Id.*  Plaintiff contends that Defendant

10   Janda was "the overseer to his own actions" and had a conflict of interest in reviewing

11   Plaintiff's claim that his appeal was not being properly processed.  *Id.* at 11-12.

12       Plaintiff contends that his "placement and retention" in administrative segregation

13   "cannot adequately be stated to advance a legitimate correctional goal" because the Court does

14   not know the basis for that decision.  *Id.* at 12-13.  Plaintiff contends that the only information

15   the Court is aware of is the 1995 report, which prison officials had already concluded did not

16   present a risk to security.  *Id.* at 13.

17       Plaintiff contends that if Defendants retaliated against his speech by "removing him

18   from the general prison population for criticizing the administration," they are not entitled to

19   qualified immunity.  *Id.* at 14.  Plaintiff contends that it is "clearly established that no person

20   shall be retaliated against for airing complaints under the first amendment . . . ."  *Id.*

21                              **APPLICABLE LAW**

22       The duties of the district court in connection with the Report and Recommendation of

23   a Magistrate Judge are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28

24   U.S.C § 636(b).  The district judge "must make a de novo determination of those portions of

25   the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in

26   part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b).  The

27   district court need not review *de novo* those portions of a Report and Recommendation to

28   which neither party objects.  *Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005);

1   *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121-22 (9th Cir. 2003) (en banc).

2      Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

3   Procedure where the moving party demonstrates the absence of a genuine issue of material fact

4   and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp.*

5   *v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive

6   law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

7   248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable

8   jury could return a verdict for the nonmoving party." *Id.*

9      "When the party moving for summary judgment would bear the burden of proof at trial,

10  it must come forward with evidence which would entitle it to a directed verdict if the evidence

11  went uncontroverted at trial. In such a case, the moving party has the initial burden of

12  establishing the absence of a genuine issue of fact on each issue material to its case." *Miller*

13  *v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (quotation omitted). "Once the

14  moving party comes forward with sufficient evidence, the burden then moves to the opposing

15  party, who must present significant probative evidence tending to support its claim or defense."

16  *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

17  (citation omitted).

18     "In ruling on a motion for summary judgment, the nonmoving party's evidence is to be

19  believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v.*

20  *Cromartie*, 526 U.S. 541, 552 (1999) (quotation omitted); *see also DiRuzza v. County of*

21  *Tehama*, 206 F.3d 1304, 1314 (9th Cir. 2000) ("For purposes of summary judgment . . . , we

22  must presume the facts to be those most favorable to the non-moving party."); *Leslie v. Grupo*

23  *ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999) (The nonmoving party's declaration or sworn

24  testimony "is to be accepted as true . . . . [The non-movant's] evidence should not be weighed

25  against the evidence of the [movant]."). At the summary judgment stage, "[c]redibility

26  determinations, the weighing of the evidence, and the drawing of legitimate inferences from

27  the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *see also*

28  *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035-36 (9th Cir. 2005) ("The

district court . . . improperly dismissed Dominguez's allegations as consisting of nothing more than 'self-serving statements in her own deposition and affidavit.'  Such observations go to whether Dominguez is credible, a determination that is exclusively within the province of the factfinder at trial, not the district court on summary judgment . . . .").  "But the non-moving party must come forward with more than the mere existence of a scintilla of evidence.  Thus, 'where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  *Miller*, 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "Simply because the facts are undisputed does not make summary judgment appropriate.  Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper."  *Id*. (citation omitted).

A prisoner does not have the same First Amendment rights as a non-prisoner.  *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  However, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison."  *Id.*  "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  A prisoner's First Amendment claim "must be analyzed in terms of the legitimate policies and goals of the corrections system . . . ."  *Id.*

In addition to directly challenging prison regulations which limit speech, a prisoner may sue for retaliation in violation of the First Amendment pursuant to 28 U.S.C. § 1983.  *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) lays out the elements of a First Amendment retaliation claim by a prisoner: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

**ANALYSIS**

Prisoner's complaints about conditions of confinement have long been held to constitute protected speech. *See, e.g.*, *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Plaintiff has offered his own declaration and records of the MAC's activities as evidence that he engaged in protected speech. The Court finds statements contained in the MAC meeting minutes and memoranda are "protected conduct" pursuant to the Ninth Circuit's decisions in *Rhodes* and *Bradley*.

Plaintiff has offered his own declaration that Defendants were aware of his speech and the MAC memoranda directed to Defendants. Additionally, Johnson stated in his declaration that he was "assigned to meet with the Men's Advisory Council," who were elected representatives of the inmates to "act as a liaison" between staff and inmates." (Doc. # 38-6 at 1-2). Plaintiff has offered sufficient evidence to allow a reasonable jury to determine that Defendants knew of Plaintiff's complaints on behalf of the MAC.

The Ninth Circuit has held that placing a prisoner in administrative segregation can constitute adverse action which chills the prisoner's First Amendment rights. *See Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). Defendants do not dispute that Plaintiff was placed in administrative segregation, rather Defendants contend that it was not in retaliation for Plaintiff's speech.

Plaintiff states in his declaration and in his deposition testimony that Defendants placed him in administrative segregation two days after Defendant Johnson warned Plaintiff that "nobody likes a whistleblower." (Doc. # 38-1 at 24). Plaintiff also stated that Johnson told Plaintiff in July 2007 that he would never return to the general population at Calipatria "would never return back to the general prison population because he complained too much" and offered the declaration of another inmate who overheard the comment. (Doc. # 41-3 at 3). Plaintiff also notes that the only justification that has been given for placing him in administrative segregation is "confidential information" which has not been put before the court and ten-year-old evidence which the February 13, 2007 memorandum shows prison officials no longer viewed as a threat to security. *See* Doc. # 41-3 at 15.

In *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995), the Ninth Circuit held that "timing can properly be considered as circumstantial evidence of retaliatory intent." In *Bruce,* 351 F.3d at 1289-90, the Ninth Circuit held that statements by a correctional officer that validation of the plaintiff as a gang member was in retaliation for complaints, "combined with the suspect timing of the investigation and the fact that stale evidence was used, certainly raise a triable issue of fact regarding whether the motive behind the validation was retaliatory." As in *Bruce,* Plaintiff has offered evidence that his placement in administrative segregation came immediately after Johnson's statement that "nobody likes a whistleblower." *See id.* As in *Bruce*, Defendants' justification for Plaintiff's placement in administrative segregation was based at least in part on "stale evidence" which had previously been found "insufficient" to show that Plaintiff still constituted a threat to the security of the prison. *See id.* Although Defendants have repeatedly asserted that they have additional evidence which supports Plaintiff's placement in administrative segregation, that evidence is not before the Court. The Court concludes that Plaintiff has offered evidence which could convince a reasonable juror that Plaintiff was placed in administrative segregation in retaliation for his First Amendment protected complaints.

If Plaintiff was placed in administrative segregation in retaliation for his complaints, such placement did not reasonably advance a legitimate correctional goal. *See id.* at 1290 ("[I]f, in fact, the defendants abused the gang validation procedure as a cover or a ruse to silence and punish Bruce because he silenced grievances, they cannot assert that Bruce's validation served a valid penological purpose, even though he ended up where he belonged.") Retaliatory acts, as a matter of law, do not "serve any legitimate correctional goal." *Id.* (quotation omitted). "[P]rison officials may not defeat a retaliation claim on summary judgment simply by articulating a genuine justification for a neutral process, where there is a genuine issue of material fact as to whether the action was taken in retaliation for exercise of a constitutional right." *Id.* (citations omitted).

As this Court previously held in its order denying Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim, "the prohibition against retaliatory punishment

is clearly established in Ninth Circuit law for qualified immunity purposes." *See* Doc. # 26 at 8 (citing *Pratt*, 65 F.3d at 806).  Defendants are not entitled to qualified immunity.

### CONCLUSION

IT IS HEREBY ORDERED that   Motion for Summary Judgment (Doc. # 38) is **DENIED**.  The Court declines to adopt the Report and Recommendation of the Magistrate Judge (Doc. # 44).  No later than fourteen (14) days from the date this Order is filed, the parties shall contact the chambers of the Magistrate Judge to schedule a case management conference regarding the status of discovery and to schedule a new final pretrial conference date.

DATED:  September 2, 2010

**WILLIAM Q. HAYES**
United States District Judge